234 So.2d 283

Ross I. HEWITT, Jr.

v.

Gladys Patterson HEWITT.

3 Div. 394.

Supreme Court of Alabama.

April 16, 1970.

Harry H. Perdue, Jr., J. Paul Lowery, Montgomery, for appellant.

**518**

Hobbs, Copeland, Franco, Riggs & Screws, Montgomery, for appellee.

HARWOOD, Justice.

In the present case the husband filed his bill for divorce, asserting cruelty as the ground. The wife filed an answer, and a cross-complaint for divorce. Cruelty was also the ground on which she based her cross-complaint.

After an extended hearing, the Chancellor entered a decree granting the cross-complainant wife a divorce. He awarded to the wife alimony in gross in the amount of $12,500, and monthly alimony of $200.00 per month for 121 months, said monthly alimony to cease upon the remarriage or death of the cross-complainant. The Chancellor also awarded a fee of $5,000 to the solicitor for the cross-complainant.

Neither the husband or wife were novice sailors on the sea of matrimony. The present marriage was his fourth, and her third. Neither seems to have learned too much in the art of choosing a mate from former experience however, as their present marriage, which has lasted some six years, appears to have been a wreck for some years prior to the filing of the respective bills for divorce.

We see no need to set out the voluminous evidence presented by the respective parties in support of their respective bills. We have carefully read and considered all of the evidence and are convinced that the evidence offered by the wife was sufficient to support the Chancellor's conclusions and decree granting her a divorce.

■ Counsel for the appellant-husband contends that the divorce granted the wife should have been denied because of the operation of the doctrine of recrimination. This doctrine is to the effect that if both parties prove a statutory, though possibly differing ground justifying a decree of divorce, such reciprocal ground will defeat the award of a divorce to each party. Stabile v. Stabile, 203 Ala. 635, 84 So. 801; Downs v. Downs, 260 Ala. 88, 69 So.2d 250; Maddox v. Maddox, 281 Ala. 209, 201 So.2d 47.

Counsel bases his argument in aspect on the testimony of the parties as to occurrences during the last quarrel which led to the wife's departure from the marital abode.

Mr. Hewitt had gone to the home of a married couple, mutual friends of both parties. The hostess issued an invitation for both Mr. and Mrs. Hewitt to have dinner that night. Mr. Hewitt replied that he and Mrs. Hewitt had been on bad terms that day. Mr. Hewitt testified this was really not true, as he and Mrs. Hewitt had enjoyed a peaceful day, and he did not know why he made this statement. He then left for his home. The hostess meantime called Mrs. Hewitt to renew the invitation for dinner, and told Mrs. Hewitt of Mr. Hewitt's statement. Mrs. Hewitt went into the bathroom to put makeup on before going to the friend's home for dinner. During this time, Mr. Hewitt came into the house. According to Mrs. Hewitt he used "a very ugly tone" and with much profanity told her he knew what was the matter with her, that she was full of pills, and began to shove her around. She went to another room to get her purse. Mr. Hewitt followed her, twisted her jacket on her and repeatedly slapped her. She picked up a chrome pipe, part of a collapsible clothes hanger because: "I wanted to have something, because my husband goes insane." Her husband took the pipe from her and "lashed" at her. She ran out of the house with Mr. Hewitt following her. She got in an automobile, but Mr. Hewitt got her out and hit her on the chin with his fist. She then ran "down the road" with Mr. Hewitt following and telling her he was going to "finish" her.

Mrs. Hewitt testified that she never struck Mr. Hewitt with the pipe, but . "I would have."

According to Mr. Hewitt, when he entered the house he saw that his wife was furious, and he asked her what was wrong. This seemed to enrage her more. When she went into the room where her purse was, he stood in the door and told her she was not going to get out until she calmed down. She then picked up the chrome pipe and he slapped her as he took the pipe away. When she ran out of the house she said she was going to cause a lot of trouble. He followed her and tried to grab her arm. She swung her purse and hit him, and he slapped her.

■ The doctrine of recrimination requires a denial of relief only if the complainant has been guilty of conduct which would entitle the opposite spouse to a divorce, that is, the misconduct should be of the degree recognized by law as a sufficient cause for granting a divorce to the other party. Nelson, Divorce and Annulment, Sec. Ed., Vol. 1, Sec. 10.03; Rankin v. Rankin (Mo.App.), 17 S.W.2d 381.

■ Further, where the one spouse has provoked the misconduct of the other, it would require a much stronger case to authorize a divorce in favor of the provoking party than if his or her conduct had been blameless. David v. David, 27 Ala. 222.

■ Under the testimony of Mr. Hewitt, the Chancellor as trier of fact could, we think, have reasonably concluded that Mrs. Hewitt's conduct was provoked by, and justified by Mr. Hewitt's actions, and no sound basis existed for application of the doctrine of recrimination.

It appears without contradiction that divorce proceedings previous to the present action had been instituted by Mrs. Hewitt, and dismissed. During this previous proceedings, Judge Thetford, before whom the matter was pending, had recommended to both parties that they consult a psychiatrist. This they both did.

In the present proceedings the complainant had called the respondent-wife as a hostile witness.

During cross-examination by her counsel, she was asked if she had not discontinued her visits to the psychiatrist because Mr. Hewitt had discontinued his visits. She answered: "That is right." Counsel for complainant then objected to the question as being a leading one. The court at first sustained the objection, but after some colloquy between the court and counsel for both parties, overruled the objection. Mrs. Hewitt was then dismissed from the witness stand.

Counsel for appellant argues at length that this ruling constitutes reversible error in that where an adverse party is called as a witness, there is no justification for permitting leading questions on cross-examination since such witness is obviously biased toward his, or her, own side. An annotation on this point may be found in 38 A.L.R.2d at pp. 952–955. This annotation reveals that a number of jurisdictions hold that the matter is within the discretion of the trial court, while others tend to support appellant's argument. We have found no Alabama case on the question.

■ We see no need to belabor this point, however, since there are two rather obvious reasons why a reversal should not be cast upon the trial court in this instance.

First, the objection came after the question had been answered, and no motion to exclude the answer was made. McBee v. McBee, 265 Ala. 414, 91 So.2d 675.

Secondly, the question and answer was completely innocuous insofar as affecting the material points to be decided by the Chancellor, that is, whether a decree of divorce should be awarded, and if awarded, the granting of alimony, and the amount thereof. Certainly no substantial right of the appellant was probably injured as a result of the ruling now questioned. Supreme Court Rule 45.

Lastly, we come to the question of alimony and solicitor's fee awarded by the Chancellor.

The evidence shows that the home place is owned jointly by Mr. and Mrs. Hewitt. The value of their equity in this home is $25,000.00. The Chancellor decreed that Mrs. Hewitt convey her interest in this house and lot to Mr. Hewitt. It would appear therefore that the gross alimony awarded should be deemed to represent the value of Mrs. Hewitt's interest in the house.

The evidence shows that Mr. Hewitt has a net estate, mostly in "blue chip" securities, of $200,000.00 to $209,000.00. Mrs. Hewitt is a qualified dental hygienist. She worked at this calling prior to her marriage, and has resumed such work since her separation from Mr. Hewitt. She earns usually around $80.00 per week. She works on an hourly basis, and her income varies with the number of people she attends. Mrs. Hewitt testified she is able to work though she has a hiatus hernia, some arthritis in her hands, and a myelogram indicated some damage to the discs in her spine. She is forty-nine years of age.

■ The awarding of alimony, and the amount thereof, as well as awarding a solicitor's fee for the wife is largely in the

discretion of the Chancellor, but the exercise of this discretion is judicial, and must not be arbitrary, and is subject to review. Owens v. Owens, 281 Ala. 239, 201 So.2d 396; White v. White, 278 Ala. 682, 180 So.2d 277; Fitts v. Fitts, 283 Ala. 369, 217 So.2d 81.

■■ The factors going into the fixing of alimony and solicitor's allowances are numerous and variable. They have been often stated in many cases. No useful purpose would be served in reviewing the oft repeated and well understood principles enunciated in such determinations. Suffice to say that such matters must be decided case by case upon the facts of each case.

We have carefully considered the allowances awarded in this case, and are not prepared to say that the discretion exercised by the Chancellor in these matters was abused by arbitrariness.

We note as to the award of the solicitor's fee, an experienced attorney of the Montgomery bar, taking into consideration the time and efforts of the solicitor for Mrs. Hewitt in representing her in these proceedings, and the other factors shown, testified that a fee of $5,000 would be a reasonable fee to be awarded the solicitor for Mrs. Hewitt. No evidence was offered tending to contradict this testimony.

■ Counsel for appellee have petitioned this court for the allowance of an additional fee for representing her on this appeal. We have considered this petition fully and are of the opinion that, in view of the ample fee allowed for representation in the proceedings below, the petition is due to be denied.

The decree appealed from is due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.