This is an appeal from a $15,000 judgment entered on a jury verdict. Morgan worked for Bill Steber Chevrolet-Oldsmobile, Inc. (hereinafter Steber), for several years. His suit charged breach of an employment contract by which he claimed Steber had promised to pay him $1,000 per month, plus 2% of total monthly gross sales and 5% of total year-end fixed gross profits. The complaint also charged fraud. Steber denied any agreement to make year-end payments.
On appeal, Steber argues that the trial court erred in not allowing it to show on cross examination that Morgan read "get rich quick" literature because, it says in brief, such evidence was "relevant and does cast a light on the possible motivation of the plaintiff." It argues that the court also erred in not allowing it to show how Ron Norwood, a witness for the plaintiff, had acted previously in an employment situation with another automobile dealership. The trial court sustained plaintiff's objection on cross examination to this question: "Were you dissatisfied with your employment at Thomas Pontiac?" The trial court properly disallowed the evidence in both instances. Neither is remotely related to the issues in the case. What kinds of literature the plaintiff read and whether the witness was happy or not in his job with a third party have nothing whatever to do with this case. While our practice allows a lawyer wide latitude on cross examination, it does not leave the trial judge without some discretion.
In commenting upon the statute dealing with cross examination, the Court stated in Powell v. Powell, 285 Ala. 230, 231 So.2d 103 (1970):
 "It does not deprive the trial judge of discretion reasonably exercised to limit the range of cross examination in respect to collateral and irrelevant matter. The undue and unnecessary consumption of time in the trial of causes, and the avoidance of multiplied collateral and irrelevant issues [are] committed in the first instance to the wise discretion of the trial judge. Drummond v. Drummond, 212 Ala. 242, 102 So. 112; Sowell v. State, 30 Ala. App. 18, 199 So. 900; Duff v. State, 40 Ala. App. 80, 111 So.2d 621; Nelson v. Darling Shop of Birmingham, Inc., 275 Ala. 598, 157 So.2d 23."
285 Ala. at 234, 231 So.2d 103. Accord, Lucky Mfg. Co. v.Activation, Inc., 406 So.2d 900 (Ala. 1981).
Counsel for Steber next argues that the court erred in refusing to allow it to show that Bill Steber, the president and principal stockholder of the defendant corporation, had a good reputation in the community for truth and veracity. He says this testimony was admissible to mitigate punitive damages and, although the latter is raised for the first time on appeal and, thus, not properly before us, that it was admissible to rehabilitate Steber, whose testimony was impeached.
Again, the trial court ruled correctly. Mr. Steber testified for the defendant. His testimony was not impeached by proof of a bad general reputation. It is only then that evidence of a good reputation becomes relevant. C. Gamble, McElroy's AlabamaEvidence § 176.01 (3) (3d Ed. 1977), states as follows:
 "If a witness has been impeached by proof of his bad general reputation as a whole or with respect to truth and veracity, the proponent of the witness may then prove the witness' good general reputation *Page 1015 
as a whole or with respect to truth and veracity."
Mr. Steber's testimony was forthright and entirely consistent with his deposition. It was not impeached in any way, and his character was not an issue in the case. Therefore, the trial court correctly disallowed it. The general rule is stated as follows in C. Gamble, McElroy's Alabama Evidence § 34.01 (3d Ed. 1977):
 "§ 34.01 Character of party to civil action offered as tending to show his conduct on a specified occasion.
 "We begin on the civil side with a general exclusionary rule which prohibits the introduction of a party's good or bad character for the purpose of showing that, on the occasion in question, he acted in keeping with that character. Such character evidence is inadmissible whether it be in the form of general reputation, general reputation for a particular trait or prior specific acts indicating a particular character. It has been determined that a party's character has very little probative value in civil cases and cannot be used as a basis for concluding that he acted in keeping with that character on the occasion in question.
 "While a civil litigant's evidence of character is generally excluded, there are exceptions to this rule. Where, by the nature of the case, the character of a party is placed in issue then proof of the general reputation for that character may be elicited. It has been held that the defendant, in an action for alienation of affections, may prove his or her good general character as tending to show innocence. A party plaintiff in a defamation action may introduce proof of his good general reputation for a trait inconsistent with the defamatory matter when truth has been alleged as a defense. It has also been held that the defendant in an assault action can introduce evidence of the plaintiff's bad general reputation for turbulence, violence and blood-thirstiness under a plea of self-defense."
Steber finally argues that the court erred in allowing character evidence to be admitted on behalf of the plaintiff. The record shows and Steber's reply brief points out that the court granted the defendant's motion to strike this testimony. There is no adverse ruling which is subject to this Court's review on this issue.
We have carefully read the record in this case and find no evidence which supports a claim for punitive damages. There is no evidence of fraud and, at most, simply a disagreement as to the terms of the contract of employment between Morgan and Steber, and this disagreement is limited to the year-end payments. Morgan testified that the year-end percentage was agreed upon, and Steber denied it. Morgan also testified that the most he would be entitled to and the exact amount he claimed was $11,214.02. Yet the jury returned a verdict for $15,000, which apparently suggests that some amount was awarded as punitive damages. If that issue were before us, we very likely would require a remittitur, but it is not. The only issues raised are those previously addressed.
Counsel for appellant does not claim error in refusing a new trial; he does not argue excessiveness or in any other way present an issue by which we can address the damages question.
As we so often say, appellate courts can only review the actions of trial courts for alleged error, properly preserved and properly presented for review. We cannot and should not review trial records de novo.
Based upon the case as presented to us, we have no alternative but to affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON and BEATTY, JJ., concur. *Page 1016